I,ARMSTRONG, Judge.
This is a personal injury case arising from a fire in a Housing Authority of New Orleans (“HANO”) housing project apartment. After a bench trial, the trial court found HANO liable and 100% at fault and awarded damages to the plaintiffs. On appeal, HANO does not contest liability or quantum of damages but does argue that it should not have been found 100% at fault. HANO argues that some of the fault should have been allocated to the manufacturer of the smoke detector in the apartment and/or to the plaintiffs. As we find that the trial court’s allocation of fault was not clearly wrong-manifestly erroneous we will affirm the judgment of the trial court.
The fire occurred in Deborah Mercadel’s apartment. She moved into that apartment in 1980. The smoke detector in her apartment sounded false alarms. She complained to HANO of the false alarms. In March 1988, HANO employee Feltus Carter replaced the smoke detector and checked the new smoke detector to determine that it was working properly. However, the false alarms from the smoke detector continued. Deborah Mercadel and her daughters testified that, when the | asmoke detector false-alarmed, she would turn the smoke detector’s circuit breaker off and then back on again but that she would never leave it off.
The fire occurred on April 13, 1991. It is uncontested that the smoke detector did not sound. There was evidence that, if the smoke detector had sounded, then the plaintiffs could have escaped the apartment without injury and HANO does not contest that point on appeal. However, *66 HANO argues that the smoke detector failed to sound either because the smoke detector was defective, in which event HANO argues that the smoke detector’s manufacturer is at fault or that the smoke detector failed to sound because its circuit breaker was turned off, in which event Deborah Mercadel was at fault. HANO also argues that Deborah Mercadel was at fault because she failed to make service requests to HANO as to the continued false alarms from the smoke detector.
However, there was substantial evidence that the smoke detector failed to sound because it was not cleaned as needed. The smoke detector manufacturer, BRK Electronics (“BRK”), supplies manuals with its smoke detectors. The manuals state that, if dust or dirt enter the smoke detector’s sensing chamber, the smoke detector can be made overly sensitive and, apparently, this can cause false alarms. The manuals also state that, if dust and dirt block the chamber entrances, then the smoke detector can become less sensitive and, according to expert testimony presented at trial, the smoke detector can fail to sound during a fire. Thus, accumulations of dust and dirt can both cause false alarms and cause the smoke detector to fail to sound during a fire. Consequently, the false alarms ^experienced by Deborah Mercadel were indicative of accumulations of dust or dirt which could cause the smoke detector to fail to sound during a fire.
The BRK manuals provided with the smoke detector state that, if dust accumulates on the smoke detector, the smoke detector should be cleaned with a vacuum cleaner using a soft brush attachment. Apparently, this would eliminate both false alarms caused by dust accumulations and the danger that the smoke detector would fail to sound during a fire.
When Feltus Carter, in March 1988, installed the smoke detector which ultimately failed to sound during the fire at issue, he did not give the BRK manual to Deborah Mercadel. Nor did he tell her anything about the risks of dust accumulation on the smoke detector as described in the BRK manual. ' This was in keeping with HANO’s standard procedure of not giving the manuals to the tenants or telling them anything about cleaning dust from the smoke detectors. Also, HANO itself did not clean dust from the smoke detectors in its apartments. This was despite the fact that smoke detector false alarms were common in HANO apartments. After the fire, George Mahl, HANO’s expert, examined the smoke detector and found that there were dust and fibers in it.
As to the circuit breaker for the smoke detector, the smoke detector would not sound if the circuit breaker was in the “off’ position. HANO implies that the smoke detector might have failed to sound at the time of the fire at issue because Deborah Mercadel may have left the circuit breaker in the “off’ position. There is no evidence that the circuit breaker was in the “off’ position at the time of the fire. |4In fact, the testimony of Deborah Merca-del, and her daughters, was that she would never leave the circuit breaker in the “off’ position. Also, plaintiffs’ expert, Jean McDowell, examined the circuit breaker after the fire and determined, based upon the patterns of soot on the circuit breaker, that it was in the “on” position during the fire.
In sum, there was substantial evidence from which the trial court, as the finder of fact, could have reasonably concluded that the smoke detector failed to sound during the fire because of an accumulation of dust in the smoke detector rather than any defect in the smoke detector or the circuit breaker being left in the “off’ position. So long as the trial court’s findings of fact are reasonable in light of *67 the evidentiary record, we may not disturb those findings on appeal. E.G., Rosell v. ESCO, 549 So.2d 840 (La.1989).
As to HANO’s contention that Deborah Mercadel was at fault in failing to complain to HANO about the false alarms from the smoke detector, there are several factors which the trial court could reasonably rely upon for its finding that Deborah Mercadel was not at fault. First, Deborah Mercadel had complained about the false alarms, and the smoke detector in her apartment had been replaced, but the false alarms had continued. Second, because HANO did not give the BRK manuals to tenants, or advise them of the contents of those manuals, Deborah Mercadel had no way of knowing that the false alarms were not just a minor nuisance but were indicative of a dangerous accumulation of dust that could cause the smoke detector to fail to sound in an emergency. Third, Deborah Mercadel |5was told by someone at HANO that, in the event of a false alarm, she should turn the circuit breaker to the “off’ position and then back to the “on” position to stop the alarm. Thus, Deborah Mercadel did discuss the false alarms with HANO and was given advice, poor advice, on how to deal with them. We cannot say that the trial court was manifestly erroneous-elearly wrong in finding Deborah Mer-cadel free of fault.
HANO’s only assignments of error are that the trial court erred by failing to allocate any fault to BRK and/or the plaintiffs. What we have said above resolves those assignments by finding that the trial court did not err. However, out of an abundance of caution, and because it is discussed extensively in the briefs, we will address the trial court’s factual finding that the smoke detector which failed had had a “troubled history” in Deborah Mer-cadel’s apartment.
The smoke detector was inspected, as part of an apartment inspection, by HANO employee Mrs. Schnecklenberg, on February 2, 1990. Mrs. Schnecklenberg did not testify. However, an apartment inspection form that she filled out was introduced into evidence. On that form, she checks off that the smoke detector had failed inspection. Although a service request should have been generated due to the smoke detector failing inspection, that was not done, and the smoke detector was not replaced.
On May 2, 1990, the smoke detector was again inspected, this time by HANO employee Leah Poree, and, on the apartment inspection form, she checked off that the smoke detector was installed but not functioning. The smoke detector |fiwas not replaced or serviced at this time either. HANO argues that the reason that the smoke detector was not functioning on May 2, 1990 was because the circuit breaker was in the “off’ position. However, if Ms. Poree had found the circuit breaker in the “off’ position, then she was supposed to have counseled Deborah Mercadel and any counseling was to be noted on the inspection form. There is no notation of counseling on the inspection form. The trial court could reasonably conclude that this suggests there was no counseling and that this in turn suggests that the circuit breaker was not left in the “off’ position.
Ms. Poree conducted another inspection of the smoke detector in October 1990 and concluded that the smoke detector was operating properly. However, there was evidence from which the trial court could reasonably conclude that Ms. Poree did not conduct the inspection properly. HANO Director of Operations Clifton Jones testified that a proper inspection of a smoke detector requires three steps: First, look to see that the smoke detector’s red light is on indicating that the smoke *68 detector is receiving power. Second, press the test button to see if the smoke detector sounds to determine if its horn is operable. Third, introduce canned smoke with a spray can to see if the smoke detector sounds. This third step, the use of canned smoke, is essential to determine that the smoke detector will actually detect smoke.
In Ms. Poree’s deposition testimony, she described inspecting the smoke detector by only looking for the red light and pushing the test button. Under these |vcircumstances, the trial court reasonably could conclude that Ms. Poree did not use canned smoke to inspect the smoke detector.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.