JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | plaintiff-appellant, James Hendrickson, appeals a summary judgment in favor of one of the defendants, William Guillory, dismissing plaintiffs claims against Guillo-ry at plaintiffs cost.
 

 On Mai'ch 24, 2003, the plaintiff filed a petition for personal injury damages he sustained during a fire in his French Quarter apartment on March 26, 2002. He named as defendants his landlord, Guillo-ry; Latter & Blum Property Management, Inc.; ABC Insurance Company as the liability insurer of William Guillory and/or his property at 912 St. Phillip St.; and XYZ Insurance Company as the liability insurer of Latter & Blum Property Management.
 

 In his First Amended and Supplemental Petition for Damages, the plaintiff named as additional defendants, Dorian M. Bennett, Inc., and its alleged liability insurer, DEF Insurance Company.
 

 Subsequently, Dorian M. Bennett, Inc. filed a Third Party Demand against Certain Underwriters at Lloyds, London as Guillory’s liability insurer.
 

 On September 24, 2007, Guillory filed the motion for summary judgment that is the subject of this appeal, contending that Guillory had no duty to Hendrickson to install smoke detectors or alarms and/or Guillory’s failure to do so |2was not a cause-in-fact of plaintiffs injuries. On April 2, 2008, the trial court granted Guil-lory’s motion for summary judgment and dismissed the plaintiffs suit. The plaintiffs motion for new trial was denied.
 

 Guillory concedes that the “plaintiff in this case was very severely injured.”
 

 Among the exhibits annexed to Guillo-ry’s Motion for Summary Judgment was a copy of the plaintiffs deposition.
 

 According to plaintiffs deposition he was working at the “Howl at the Moon” bar and restaurant on Bourbon Street on the night of March 25, 2002. He testified that,
 

 Typically I would go in around 2:00 o’clock in the afternoon and, depending on business, I would be there until between 3:00 and 6:00 a.m.
 

 His shift did not end until two or three o’clock the morning of March 26. He stopped by a grocery store on his way home to pick up some groceries and a six-pack of beer.
 

 When he arrived at his apartment at 912 St. Phillip Street, which he estimated to be around 3:00 or 4:00 a.m., he proceeded to cook some sausage patties in the oven, checked his e-mail, and remained in his apartment for a while where he took a shower and changed his clothes.
 

 Shortly thereafter, between 10:00 and 11:00 a.m. on the morning of March 25, he went to the Alibi Bar where he drank beer for approximately four hours. He estimated that he left the Alibi Bar and got back home at around 3:00 to 4:00 p.m. the afternoon of March 26. He still had no sleep from the night before. He then fell asleep in an easy chair in front of the T.V. after presumably smoking some cigarettes. The plaintiff has not argued on appeal that the fire was caused by any defect in the premises or with any appliances supplied as part of the leasehold. |sThe plaintiff did note in his opposition to the Motion for Summary Judgment that the origin of the fire was in the back room kitchen area. The only allegation below against the defendant-landlord, Mr. Guillory, is that he failed to provide fire extinguishers and smoke detectors. On appeal, the plaintiff
 
 *258
 
 has focused his arguments exclusively on smoke detectors. Plaintiff has not raised the question of fire extinguishers in this appeal. Therefore, we consider the question of fire extinguishers to be abandoned.
 

 Guillory contends that the accident would have occurred irrespective of his allegedly negligent conduct in not providing fire extinguishers or smoke detectors. Therefore, he argues that even if he did have a duty to provide fire extinguishers and smoke detectors, the failure to do so was not a cause-in-fact of the plaintiffs injuries. Guillory states in his brief that:
 

 [T]he plaintiffs condition of severe exhaustion and intoxication points to the conclusion that he would have suffered his alleged injuries irrespective of the absence of fire extinguishers and/or smoke detectors.
 

 This is the type of inference that a fact finder might make after a trial on the merits. However, there is not enough evidence in the record on a motion for summary judgment to warrant the conclusion that just because the plaintiff had been drinking and had not had much sleep, that he necessarily was not in condition to benefit from a smoke detector had one been installed.
 

 We review summary judgments
 
 de novo:
 
 First, despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. See
 
 Independent Five Insurance Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 at pp. 16-17 (La.2/29/00), 755 So.2d 226, 286 (noting the court “must draw those inferences from the undisputed | Tacts which are most favorable to the party opposing the motion”); See also
 
 Hebert v. St Paul Fire and Marine Ins. Co.,
 
 99-0333 (La.App. 4th Cir.2/23/00), 757 So.2d 814.
 

 Willis v. Medders,
 
 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
 

 On the basis of a motion for summary judgment, the record does not permit the conclusion that the plaintiff would have been injured regardless of the presence of a smoke alarm. Therefore, if this court is to affirm the judgment below it cannot be on the basis that the plaintiff would have been injured regardless of whether there had been a smoke detector.
 

 Accordingly, the decision of this court must be based on a determination of whether the defendant had a duty to the plaintiff to supply a smoke detector and breached that duty. At the outset there can be no dispute that if the defendant owed such a duty, then the duty was breached as the defendant does not dispute the fact that there was no smoke detector. If such a duty existed then, at the very least, it creates a genuine issue of material fact as to whether the undisputed breach of that duty constituted a cause in fact of the plaintiffs injuries. Thus, this appeal boils down to the question -of whether the defendant owed the plaintiff a duty to furnish a smoke detector. The defendant argues that he had no duty to do so.
 

 The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide.
 
 Mathieu v. Imperial Toy Corp.,
 
 94-0952 (La.11/30/97), 646 So.2d 318, 322. Summary judgment procedure is well suited to the resolution of questions of law.
 

 Lott v. Lebon,
 
 96-1328 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, provides no guidance to this Court as it was not decided on motion for summary judgment. The same can be said of
 
 Lee v. Carwile,
 
 168 So.2d 469 (La.App. 3 Cir.1964). | ¿Additionally,
 
 *259
 
 the plaintiff’s case in
 
 Candle
 
 was based on the violation of certain statutory requirements and there are no such applicable statutory requirements in the instant case. Moreover, in spite of the violation of fire safety regulations, the
 
 Carwile
 
 court still ruled in favor of the defendant based on a finding that the violation of the fire safety regulations was not the cause of the plaintiffs injuries.
 

 However, we agree with the plaintiff that negligence does not depend solely on violation of statute.
 
 Haydel v. Hercules Transport, Inc.,
 
 94-0016 (La.App. 1 Cir. 4/7/95), 654 So.2d 408;
 
 Corley v. Gene Allen Air Service,
 
 425 So.2d 781, 784 (La.App. 8 Cir.1982). La. C.C. art. 2315 provides a general theory of negligence, along with strict liability (now negligence) under La. C.C. art. 2317.1, and landlord liability under La. C.C. art. 2695.
 

 In
 
 South Cent. Bell Tel. Co. v. Sewerage and Water Board of New Orleans,
 
 94-1648 (La.App. 4 Cir. 3/16/95), 652 So.2d 1090, this Court explained that:
 

 In
 
 RobeBs v. Benoit,
 
 605 So.2d 1032 (La.1991), the Louisiana Supreme Court held that in order to prevail on a negligence claim under La. C.C. articles 2315 and 2316 a plaintiff must prove 5 separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element.) To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant’s conduct, the incident probably would not have occurred. The critical test in Louisiana is phrased in terms of the “ease of association” which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant? The essence of the legal cause inquiry is whether the risk and harm | fiencountered by the plaintiff fall within the scope of protection of the duty.
 

 The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... In determining the limitation to be placed on liability for defendant’s substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
 
 Faucheaux v. Terrebonne Consolidated, Government,
 
 615 So.2d 289, 293-294 (La.1993).
 

 Id.
 
 at pp. 3-4, 652 So.2d at 1093-94.
 

 While we cannot say that the plaintiff has totally abandoned his arguments concerning the defendant’s alleged breach of certain alleged statutory duties, he has shifted the emphasis of his arguments on appeal to theories of general negligence, strict liability and landlord liability. He makes only a passing reference to certain statutes in footnote # 9 to his appellate brief. We shall, however, give those statutes our full consideration.
 

 La. R.S. § 40:1581 provides in pertinent part:
 

 
 *260
 
 A. All single and two family dwellings constructed after Januai’y 1, 1992, shall contain approved smoke detectors.
 

 It is undisputed that the apartment was constructed before January 1, 1992. Therefore, La. R.S. § 40:1581 is inapplicable. La. R.S. § 40:1578.6, effective in January of 1975, requires that newly constructed buildings must comply with fire and safety codes, and reads in pertinent part:
 

 17This Section shall not apply to existing buildings, except as provided for by R.S. 40:1641
 
 et seq., ...
 
 unless the fire mar-shall deems that a serious life hazard exists due to a particular condition.
 

 The plaintiff does not contend that the apartment was constructed after the January 1975 effective date of the statute. Nor does the plaintiff contend that the fire marshal made any finding with respect to any “life hazard” at the premises. Therefore, there is nothing in the record that would create a genuine issue of material fact under La. R.S. § 40:1578.6.
 

 The plaintiffs footnote also refers to the New Orleans Municipal Code § 26-246 requirement to furnish a smoke detector, but under New Orleans Municipal Code, § 26-176 that requirement does not apply to premises not constructed, altered or repaired after the effective date of the Code, in this case Ordinance No. 21228, § 2, 9^1-03. The plaintiff does not contend that 912 St. Philip Street was constructed, altered or repaired after the effective date of the Code requirement to furnish smoke detectors.
 

 The fact that the statutory provisions exempt certain classes of properties from their application (the defendant’s property in the instant case being one such property) can be read as an indication that the regulation creates the implication that, absent the existence of some extraordinary set of circumstances which the plaintiff has not demonstrated in the instant case, a policy decision was made that as a matter of law owners of excluded properties would not be considered to be negligent in taking advantage of the exclusion. In the context of the landlord-tenant relationship in older structures to which the smoke detectors statutes and ordinances do not apply, this policy can be viewed from the perspective of the fact [sthat inexpensive smoke detectors are available and that the tenant can purchase one just as easily as can the landlord, especially when we can reasonably assume that the cost will ultimately be passed along to the tenant anyway in the form of rent.
 

 The cases cited by the plaintiff,
 
 Potter v. First Federal S & L,
 
 615 So.2d 318, 325-326 (La.1993);
 
 Veazey v. Elmwood, Planation Association,
 
 650 So.2d 712 (La.1994); and Viola
 
 v. Arlen Realty Corporation, 402
 
 So.2d 232 (La.App. 4 Cir.1981), do not involve any similar or analogous statutory provisions. More particularly, none of those cases involved smoke detectors.
 

 While
 
 Mercadel v. Housing Authority of New Orleans,
 
 00-1885 (La.App. 4 Cir. 9/19/01), 803 So.2d 64, is a smoke detector personal injury case, it is totally inapposite to the instant case. In
 
 Mercad,el,
 
 the landlord, the Housing Authority of New Orleans, assumed the responsibility of supplying and maintaining a smoke detector, but then was found to have been negligent in the maintenance of it, resulting in the tragic deaths of several tenants.
 
 Mercadel
 
 stands for the proposition that when the landlord assumes the responsibility to furnish a smoke detector and to service it, the landlord owes a duty to the tenant to discharge responsibilities in a non-negligent manner and may be held liable for
 
 *261
 
 the failure to do so.
 
 [1]
 

 More on point is
 
 Pulling ex rel. Pulling v. Desmate,
 
 00-1869 (La.App. 5 Cir. 5/30/01), 788 So.2d 706, a fire death case which provides persuasive support for the trial court decision in the instant case to grant Guülory’s motion for summary judgment. In
 
 Pulling,
 
 the court reversed the trial court denial of the defendant’s motion for summary judgment, finding among other things that where plaintiff |9failed to overcome the defendant’s evidence that the Jefferson Parish Building Code did not require smoke detectors in a home of the age of the home where the fire occurred, there was no breach of duty in failing to have a smoke detector installed. As the plaintiff in the instant case has failed to show that any statutory requirement obligating Guillory to install a smoke detector, according to the court’s rationale in
 
 Pulling,
 
 Guillory had no duty to do so.
 

 The plaintiffs unsuccessful motion for new trial below was based entirely on the unreported federal district court case of
 
 Bacon v. Travelers Insurance Company,
 
 1995 WL 716772, E.D.La., December 5, 1995, which also happens to be the case his brief relies upon most heavily in this appeal. In
 
 Bacon
 
 the district court found that the landlord had a duty to provide smoke detectors based on one federal case almost twenty years old applying Mississippi law and another almost thirty years old applying Washington law. In the Mississippi case,
 
 Hill v. London, Stetelman, and Kirkwood, Inc.,
 
 906 F.2d 204 (5th Cir.(Miss.) 1990), the statutory law required that the property be supplied with a smoke detector which is the direct opposite of the instant case where the defendant’s property fell into the class of specifically exempted properties.
 

 The Washington case cited by the
 
 Bacon
 
 court,
 
 Younger v. U.S.,
 
 662 F.2d 580 (9th Cir.1981), involved a particular rule peculiar to the common law of Washington and has no bearing on this Court’s decision here today.
 

 Additionally, the
 
 Bacon
 
 court (apparently unaware of the
 
 Pulling
 
 case to the contrary, supra) acknowledged that outside of these two distinguishable foreign cases, it could find no other precedent from any jurisdiction to support its position. Accordingly, in the absence of any precedent of substance to the contrary, we find no basis for overruling the trial court on this issue. Therefore, even viewing all the Imfacts in the light most favorable to the plaintiff, we find as a matter of law that the defendant owed the plaintiff no La. C.C. art. 2315 duty to provide a smoke detector under these circumstances.
 

 The plaintiff also contends that the defendant had a landlord’s duty under La. C.C. art. 2695 to provide a premises free of vices and defects. We find that the absence of a smoke detector is not the type of vice or defect envisioned by La. C.C. art. 2695. In
 
 Bacon, supra,
 
 the court specifically found that the failure to supply a smoke detector was not a breach of La. C.C. art. 2695. We agree.
 

 In footnote # 12 to his appellate brief, the plaintiff makes reference to La. C.C. art. 2317.1 as also being applicable. However, he cites no authority in support of that position and makes no argument other than the statement that is applicable. We find this argument unpersuasive and mention it only for the sake of completeness.
 

 
 *262
 
 For the foregoing reasons, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Mercadel
 
 is silent as to whether HANO rules, regulations or policies require HANO to supply and maintain smoke detectors. All we know is that in
 
 Mercadel
 
 it assumed the responsibility to do so for whatever reason.